**UNITED STATES of America, Plaintiff,**

v.

**PENN CENTRAL TRANSPORTATION COMPANY, Defendant.**

**Civ. No. C 75–293.**

United States District Court,
N. D. Ohio, W. D.

Nov. 3, 1977.

Patrick J. Foley, Asst. U. S. Atty., Toledo, Ohio, Thomas C. Barbour, Trial Atty., Federal Railroad Administration, Washington, D. C., for plaintiff.

Michael E. McGill, Toledo, Ohio, for defendant.

OPINION AND ORDER

DON J. YOUNG, District Judge:

This cause came on to be heard upon cross-motions of plaintiff and defendant for summary judgment. The facts are not in dispute, the parties having entered into a detailed stipulation of facts for purposes of consideration of the motions.

This is an action brought by the United States of America against Penn Central Transportation Company (hereafter Penn Central), a common carrier engaged in interstate commerce by railroad during the time period relevant herein, for recovery of civil penalties under the Hours of Service

Act, 45 U.S.C. § 64a. It is the contention of the United States that the defendant permitted Mr. Ben K. Tracey, an employee locomotive engineer, to continue to remain on duty on July 27, 1973, for a total of more than 12 hours in violation of the Hours of Service Act, as amended, 45 U.S.C. § 62.

On the date on which the violation of the Act allegedly occurred, Mr. Tracey was employed as a locomotive engineer by Penn Central. His normal reporting station for duty with the defendant was in Bellefontaine, Ohio. At Bellefontaine the defendant maintained a list of engineers known as the Bellefontaine Extra Board. Engineers listed on the extra board are subject to call as needed for extra service or for the filling of vacancies in regular engineer assignments in Kenton, Carey, and Sandusky, Ohio.

On July 27, 1973, Mr. Tracey was assigned to the Bellefontaine Extra Board, was called by the crew dispatcher at Bellefontaine at approximately 5:00 o'clock A.M., and was ordered to report to an outlying duty station in Carey, Ohio to fill a vacancy which had occurred in the position of engineer on a local freight assignment designated as CCK-1 and CCK-2. This assignment had a regularly assigned reporting time and place, namely 8:00 o'clock A.M. daily, except Saturday and Sunday, at the Carey, Ohio freight station.

The defendant does not furnish its employees with transportation when they are required to report to outlying points such as Carey. Under the Collective Bargaining Agreement with the Brotherhood of Locomotive Engineers, the employees receive one basic day's pay for traveling and an allowance of 9 cents per mile for the use of their private automobile.

On the day in question Mr. Tracey drove his own automobile to the assigned duty point. He left his residence at 6:15 o'clock A.M. Although not required to do so, he drove first to Bellefontaine, his normal reporting station and stopped at the crew dispatcher's office. He left Bellefontaine at approximately 6:30 o'clock A.M. and drove to Carey. The distance between Tra-

cey's residence and the Carey, Ohio freight station (45.2 miles) is approximately equal to the distance from the crew dispatcher's office in Bellefontaine to the same point (48.6 miles). For purposes of consideration of any violation of the Hours and Services Act, therefore, the Court will treat 6:30 o'clock A.M. as the point in time in which Tracey began his required travel to Carey. It is further stipulated by the parties that:

Engineer Tracey operated train No. CCK-½ from 8:00 a. m. until 7:15 p. m. on July 27, 1973. If the time spent deadheading from Bellefontaine to Carey is included as on duty time, he was on duty for 12 hours and 45 minutes, calculated from 6:30 a. m. when he left Bellefontaine. If such time is not counted, he was on duty for 11 hours and 15 minutes from 8:00 a. m. *Stipulation of Facts*, p. 3.

Based upon the stipulated facts the sole issue before the Court is one of law: whether the time spent deadheading from Bellefontaine to Carey is to be included as time on duty under the Hours of Service Act, as amended, 45 U.S.C. §§ 61–64b. Should the time spent deadheading constitute time on duty under the Act, defendant violated 45 U.S.C. § 62(a) by permitting or requiring Tracey to be continuously on duty for a period in excess of 12 hours and is liable for a civil penalty of $500 under 45 U.S.C. § 64a.

The Hours of Service Act of 1907, 34 Stat. 1415, was amended in 1969 by Public Law 91–169, 83 Stat. 463, enacted on December 26, 1969. The amendments effected a substantial revision of the 1907 Act including a reduction of the maximum hours of service permitted for employees covered under the Act and a definition of what constitutes time on duty and time off duty under the Act. Under the phased reduction of the maximum hours on duty, the statutory limitation effective on July 27, 1973, was 12 hours. 45 U.S.C. § 62(a)(1). The relevant amendments relating to the definition of time on duty is codified under 45 U.S.C. § 61(b)(3)(C):

(b) For the purposes of sections 61 to 64b of this title—

\* \* \* \* \* \*

(3) Time on duty shall commence when an employee reports for duty and terminate when the employee is finally released from duty, and shall include:

\* \* \* \* \* \*

(C) Time spent in deadhead transportation by an employee to a duty assignment: Provided, That time spent in deadhead transportation by an employee from duty to his point of final release shall not be counted in computing time off duty; . . . .

The term "deadhead transportation" is not defined in the Act, although the deficiency was pointed out by the Administrator of the Federal Railroad Administration in both the House and Senate hearings on the subject. *Hearings on H. R. 8449, H. R. 84, and H. R. 9515 Before the House Committee on Interstate and Foreign Commerce,* 91st Cong., 1st Sess. 257 (1969) (hereafter *House Hearings*); *Hearings on S. 1938 Before the Subcommittee on Surface Transportation of the Senate Committee on Commerce,* 91st Cong., 1st Sess. 192 (1969) (hereafter *Senate Hearings*). In the hearings on the proposed amendments in 1969, various definitions were offered. Mr. R. R. Manion, Vice President, Operations and Maintenance Department, Association of American Railroads defined deadheading as "travel performed by railroad employees at the direction of a railroad." *House Hearings* at 134; *Senate Hearings* at 137. Another spokesman for the railroad industry, Mr. J. P. Hiltz, Chairman, National Railway Labor Conference, stated that "deadheading is being transported from one point to another at carrier's orders without performing any service." *House Hearings* at 220.

It is the contention of the defendant that under the facts in the case Tracey must be treated in the same manner as other employees who commute to work. Under the analysis of the defendant, travel time spent by a covered employee at the direction of a carrier to an assigned duty point other than his normal duty station does not constitute deadhead transportation or time on duty under the Act unless the employee was required first to report to his normal duty station. In support of this argument, the defendant cites a report of the Senate Commerce Committee which provided a section by section analysis of the 1969 amendments to the Act. The report provides in pertinent part:

> The phrase "deadhead transportation to duty assignment" in section 1(b)(3)(C) is intended to mean that time spent traveling by the employee calculated from the time he reports for duty until he reaches his duty assignment. It does not include transit time to and from the employee's residence. S.Rep. No. 91–604, 91st Cong. 1st Sess. 8, reprinted in [1969] U.S.Code Cong. & Ad.News, pp. 1636, 1640.

Plaintiff rejects this analysis and relies upon the interpretation of the Act by the Federal Railroad Administration (hereafter FRA), the agency entrusted with the administration of the Act and its enforcement, and contends that such an interpretation is required if the 1969 amendments are to achieve the humane purposes for which they were adopted. On January 9, 1973, the FRA issued an information memorandum with regard to the agency's interpretation of the Act following the 1969 amendments. The memorandum provides in pertinent part:

> The phrase "deadhead transportation by an employee to a duty assignment" is intended to mean that time spent traveling by the employee calculated from the time he reports for duty until he reaches his duty assignment. It does not include transit time to and from the employee's residence to the reporting or duty point except as covered in paragraph (1) below.
>
> \* \* \* \* \* \*
>
> (1) If an employee utilizes automobile transportation from his home to point of duty assignment in lieu of deadhead transportation provided by the carrier, such travel time is considered as deadheading time and is on-duty time. This means actual travel time. . . . .

The agency continued to follow this interpretation of the Act. 40 Fed.Reg. 42692 (1976).

 It cannot be disputed that the Hours of Service Act is remedial in nature and is entitled to a liberal construction to serve the humane purposes for which it was adopted. *E. g., Atchison, Topeka & Santa Fe Ry. v. United States,* 244 U.S. 336, 343, 37 S.Ct. 635, 61 L.Ed. 1175 (1917); *Jopek v. New York Central R. R.,* 353 F.2d 778, 781 (3d Cir. 1965). Furthermore, the interpretation given a statute by the agency entrusted with its administration and enforcement is entitled to deference. *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616, *rehearing denied,* 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283 (1965). It is the opinion of this Court that both a liberal construction of the Act and proper deference to the interpretation of the statute by the FRA requires the rejection of the analysis of the defendant. Although where the carrier provides deadhead transportation the travel time between the employee's residence and the normal duty station would not constitute time on duty under the Act (such travel does not differ in nature from commuting to work), it is clear that the Congressional intent behind the amendment to include time spent in deadhead transportation to a duty assignment as time on duty under the Act would be defeated if the recently enacted remedial measure can be circumvented by the carrier's requiring the employee to travel directly to the assigned duty station by his own means without first reporting to his normal duty station. The cryptic note of the Senate Commerce Committee's Report cited by the defendant presupposes that the employee is required to report to his normal duty station prior to deadheading. The Court therefore concludes that where, as here, the employee is ordered to travel by his own means directly from his residence to the assigned point of duty other than his normal duty station, such travel is deadhead transportation under the Act and the time spent therein constitutes time on duty. Therefore the motion of plaintiff for summary judgment will be sustained.

THEREFORE, for the reasons stated, good cause appearing, it is

ORDERED that the motion of plaintiff for summary judgment be, and it hereby is, sustained; and the clerk shall enter judgment in favor of the plaintiff, and against the defendant, in the amount of Five Hundred Dollars ($500.00); and it is

FURTHER ORDERED that the motion of the defendant for summary judgment be, and it hereby is, overruled.

IT IS SO ORDERED.