**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**PENN CENTRAL TRANSPORTATION COMPANY, Defendant-Appellant.**

**No. 78-3036.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1980.

Decided March 3, 1980.

Michael E. McGill, Doyle, Lewis & Warner, Toledo, Ohio, for defendant-appellant.

James R. Williams, U. S. Atty., Toledo, Ohio, Barbara Betsock, Thomas C. Barbour, Federal Railroad Administration, Washington, D. C., for plaintiff-appellee.

Before EDWARDS, Chief Judge, KEITH, Circuit Judge, and WISEMAN,* District Judge.

PER CURIAM.

This appeal by appellant Penn Central Transportation Co. claims that the District Court which heard this civil action brought by the United States for recovery of penalties under the Hours of Service Act, 45 U.S.C. §§ 61–64b (1976), misconstrued the applicable statute and thus erred in entering judgment for $500 against the railroad.

As stipulated by the parties, the issue is: "whether defendant's engineer and employee, Ben K. Tracey, continuously remained on duty for a time period in excess of twelve hours so as to bring into play the applicable penalties under the Hours of Service Act, Title 45, U.S.Code §§ 61–64b."

The facts in the case are stipulated as follows:

1. Mr. B. K. Tracey is employed by defendant, Penn Central Transportation Company as a locomotive engineer.

2. Mr. Tracey resides at Rural Delivery No. 1, Huntsville, Ohio. He normally reports for duty at Bellefontaine, Ohio.

3. On July 27, 1973, Mr. Tracey was assigned to an extra list of engineers known as the Bellefontaine Extra Board. Engineers listed on the extra board are subject to call as needed for extra service or for the filling of vacancies in regular engineer assignments in and around Bellefontaine, Ohio. Among the outlying points at which engineers off the extra board are used from Bellefontaine, Ohio, are Kenton, Carey and Sandusky, Ohio.

4. On July 27, 1973, Mr. Tracey was called by the crew dispatcher at Bellefontaine and ordered to report at Carey, Ohio, an outlying duty station, to fill a vacancy which had occurred on the position of engineer on a local freight assignment designated as CCK–1 and CCK–2. The regularly assigned engineer was absent on that date and subsequent dates.

Said assignment was a regular assignment with a fixed reporting time and place, namely 8:00 a. m. daily except (Saturday and) Sunday at the Carey, Ohio freight station.

5. The Carey, Ohio freight station is approximately 48.6 miles from the Bellefontaine crew dispatcher's office and approximately 45.2 miles from Huntsville, Ohio, Mr. Tracey's residence.

6. Tracey was not ordered nor required to report to the office of the crew dispatcher at Bellefontaine. His instructions were to arrive at Carey in advance of the 8:00 a. m. starting time to perform service on CCK–1 and CCK–2. The driving time from Bellefontaine to Carey is approximately one hour and six minutes, driving at speeds of 50 miles per hour or less.

7. Tracey left home at approximately 6:15 a. m. Although not required to do so, he drove to Bellefontaine, his normal reporting station, and stopped at the crew dispatcher's office. He left Bellefontaine at approximately 6:30 a. m. and arrived at Carey in time to fulfill the assignment as engineer on CCK–1 and CCK–2.

8. No transportation is provided by the company between Bellefontaine and Carey. Extra board engineers called for positions at outlying points who are unable to reach the reporting point are "marked down" on the extra board list.

The statute at issue in this case in applicable part provides:

(b) For the purposes of sections 61 to 64b of this title—

\* \* \* \* \* \*

(3) Time on duty shall commence when an employee reports for duty and terminate when the employee is finally released from duty, and shall include:

\* \* \* \* \* \*

(C) Time spent in deadhead transportation by an employee to a duty assign-

---

* Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

ment: Provided, That time spent in deadhead transportation by an employee from duty to his point of final release shall not be counted in computing time off duty; . . . .

45 U.S.C. § 61(b)(3)(C) (1976).

The problem is that "deadheading" is not defined in the Act. Like the District Judge, we have reviewed the legislative history and find it inconclusive. As a consequence, we must, as the District Judge did, turn to statutory construction and administrative interpretation in order to resolve what has clearly been a long continuing dispute.

■■■ On consideration of this whole record, we adopt the reasoning and decision of the District Judge in his opinion granting judgment to the United States:

> On January 9, 1973, the FRA issued an information memorandum with regard to the agency's interpretation of the Act following the 1969 amendments. The memorandum provides in pertinent part:
>
> > The phrase "deadhead transportation by an employee to a duty assignment" is intended to mean that time spent traveling by the employee calculated from the time he reports for duty until he reaches his duty assignment. It does not include transit time to and from the employee's residence to the reporting or duty point except as covered in paragraph (1) below.
>
> > \*  \*  \*  \*  \*  \*
>
> > (1) If an employee utilizes automobile transportation from his home to point of duty assignment in lieu of deadhead transportation provided by the carrier, such travel time is considered as deadheading time and is on-duty time. This means actual travel time. . . .
>
> The agency continued to follow this interpretation of the Act. 40 Fed.Reg. 42692 (1976).
>
> It cannot be disputed that the Hours of Service Act is remedial in nature and is entitled to a liberal construction to serve the humane purposes for which it was

adopted. *E. g., Atchison, Topeka & Santa Fe Ry. v. United States*, 244 U.S. 336, 343, 37 S.Ct. 635, 637, 61 L.Ed. 1175 (1917); *Jopek v. New York Central R.R.*, 353 F.2d 778, 781 (3d Cir. 1965). Furthermore, the interpretation given a statute by the agency entrusted with its administration and enforcement is entitled to deference. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616, *rehearing denied*, 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283 (1965). It is the opinion of this Court that both a liberal construction of the Act and proper deference to the interpretation of the statute by the FRA requires the rejection of the analysis of the defendant. Although where the carrier provides deadhead transportation the travel time between the employee's residence and the normal duty station would not constitute time on duty under the Act (such travel does not differ in nature from commuting to work), it is clear that the Congressional intent behind the amendment to include time spent in deadhead transportation to a duty assignment as time on duty under the Act would be defeated if the recently enacted remedial measure can be circumvented by the carrier's requiring the employee to travel directly to the assigned duty station by his own means without first reporting to his normal duty station. The cryptic note of the Senate Commerce Committee's Report cited by the defendant presupposes that the employee is required to report to his normal duty station prior to deadheading. The Court therefore concludes that where, as here, the employee is ordered to travel by his own means directly from his residence to the assigned point of duty other than his normal duty station, such travel is deadhead transportation under the Act and the time spent therein constitutes time on duty. Therefore the motion of plaintiff for summary judgment will be sustained.

United States v. Penn Central Transportation Co., 445 F.Supp. 561, 563-564 (N.D.Ohio 1977).

The judgment of the District Court is affirmed.